Good morning. My name is Don Runnig and I represent Ian Michael Stead and Belinda Stead, who are trying to recover a tax payment that they made in February of 2002. This is the case of the missing bank levy. This is the most amazing case I've ever heard about, so here's my question. It says in their bank statement that the money was debited to the account, correct? It was taken from the bank account. Taken from the bank account and it has a little code next to it. Has it ever been determined in this record where the money went? No, the IRS... I mean, they say they didn't get it. They didn't get it. And we know your clients don't have it. So I guess we... It's like in money heaven. Well, it's probably in the bank's hand construing the facts most favorably. Did you sue the bank? No. Why not? Because we didn't have a right to that money. It was a proper levy. There was nothing wrong with it. It was what? It was a proper and legal levy. There was no... they never contested... But do you lose the... you don't have the right to move or change the money around when there's a levy. But do you lose all right to it in the sense that your client couldn't sue the bank? For example, there could be a levy to support a tax lien, I suppose, and somebody could go litigate the validity of the tax, you know, in some legal proceeding and get it canceled, let's say, and that would be the end of the tax lien. So they get their money back. It's like they don't lose their money. Well, they've never released the lien. The IRS has never released this lien. If you look under 6332 in the regs, in the code, the government has to release the money back to the taxpayer. I understand the government hasn't gotten rid of their lien. They say they've not been paid. But I guess I'm questioning why your client couldn't sue the bank. Well, let's take that at what point. I mean, because when the levy was made, we're not contesting the underlying tax liability. The time that the overpayment occurred was February of 2002, some six years after that levy actually occurred. Until that time, the taxpayers thought that that money was used to defray their 1994 liability. And in reality, we're arguing it was. And that satisfied the liability. Did the IRS stop hounding him for the money after the levy? Well, there was some correspondence, and there's a little bit of it in the record, where he submitted his bank statements showing that the money had been taken. Okay, I think there's some in the record in 98. I think there's some correspondence there from the IRS that actually talked to the bank. And the bank said their books were in balance, and here's your materials back, Mr. Stead. But they didn't lift anything at that time. And it's our position that the government's chargable with receiving the money and paid the tax. The taxpayer didn't have any legal right to pursue and receive that money. And the government did, apparently, would have had the right to sue the bank or complain if they didn't get the money and if they didn't do anything. But the tax still remains unpaid, and everybody agrees that's the case. And you're claiming a double payment. But how do you show a double payment if you can't show payment in the first place? Oh, I think that they're chargable with the receipt of the funds. You didn't charge them with having the receipt of it because they took possession? Well, look at the law. Look at the law. The levy is a summary seizure of the funds. Under the law, the bank is supposed to hold it for 21 days during a period of time where anyone can raise conflicting claims. The regs then provide on the next business day after the 21 days, the money must be submitted to the Internal Revenue Service unless the service releases it or extends that period of time. There's no indication that there was any extension or any release. And then your client sees the debit in their bank account. It's paid. It's paid. We're not attacking the levy. I understand that. And so it's what's replaced. If the IRS never got the money, of course the record's devoid of, you know, how they handled levies and what happened in this particular case. But it's a debit-creditor relationship between the bank and the Internal Revenue Service. The debit of your client's account at the time the levy is made, right? Yes. The client's account is debited by the bank. Yes. But the bank doesn't have a record of a payment to the IRS. Okay, so the question I have is at the point where your client finds out that the IRS has not been paid, why can't they sue their bank now? What grounds would they sue them on? I mean, sue the bank? I mean, it was a legal levy. It hasn't been released. I'm still trying to understand why a party can't sue to get a piece of property like money to which they have legal title even if somebody else has a lien on the property or some security interest in it that would block the property in some way. With all due respect, Your Honor, they did not have legal title to that property. Okay. The property's vested in the government's constructive possession. Okay. That would be helpful to me. There's some precedent that says that at the time of the levy that the government gains title to the property. Well, there's a National Bank of Commerce case in the Cain case cited by opposing counsel that says that the IRS steps into the shoes of the taxpayer. They're subrogated to the rights they obtain on the levy. They obtain the rights that the taxpayer had in the account. Writing pools, National Bank of Commerce also indicates that the government is in constructive possession of the funds upon the levy. I don't think there's any dispute in the case. There's the case to say that it's provisional because since the government only steps into the shoes of the taxpayer, if there's a superior right to the funds, by some other party can raise a claim that, you know, our right is superior to the IRS's. But no one's raised any sort of claims in this particular case. And I think that, you know, it's the government didn't collect the money. I mean, that's who the government didn't follow through and make sure they got the money out of the levy. I mean, and it's unfair to impose the loss on the taxpayer when he didn't have control. And I'd like to save three minutes of rebuttal unless there's another question. Thank you. Good morning. May it please the Court. I'm Karen Gregory for the United States of America. Does the government have legal title to the funds once they place the levy on the funds? No. The Supreme Court has held in both Whining Pools and National Bank of Commerce that the levy does not transfer ownership of the levy-to-Palm property to the IRS. Do you have constructive possession of it? The notion of constructive possession arose under the old Bankruptcy Act, where the bankruptcy court's jurisdiction was limited to property that was in the debtor's The court lacked jurisdiction to order creditors who were in possession of the debtor's property to turn over that property to the bankruptcy estate. The notion of constructive possession arose as a defense to that, the turnover orders from the bankruptcy court. Has the government tried to get this money from First Interstate, now Wells Fargo? Did it? I'm sorry. Has the government tried to get the money? To my knowledge, the government did not enforce this levy. There's no authority that requires the government to enforce the levy. Well, you know, it's just a bizarre situation. They've paid twice. The government issued the levy, correct? The government issued the notice of levy. And as soon as they issued the notice of levy, an argument by the bank holder that there's some contest, then does the bank have an obligation under federal law to comply with the levy? Yes, it does. And did the bank comply with the levy? The bank did not comply with the levy. Do we know that? I mean, how do we know that? There's no evidence that the bank permitted payment to the IRS. Because the IRS does not have any record of receiving it, and the records in the bank are gone. The records in the bank are now gone. Mr. Stead made inquiries not long after he learned that the service did not receive those funds from the bank. The definitive issue occurred in September 1996. Within a year, another notice of levy was sent out to Mr. Stead. So he was on notice at that point that the government did not consider his liability paid. In May of 1998 or so, he did make inquiries to the bank, and the bank produced no evidence of having paid the service. Now, I don't know this for a fact, but presumably bank records would have not been destroyed yet at that time. More recently they were destroyed. But the bank records clearly show that the levy came in, and the exact amount of the levy was debited to the taxpayer's account. Correct. So it was debited to the taxpayer's account. The taxpayer lost control over the funds at that point. The funds may have been paid out to the IRS, or they may have been paid to someone else by mistake, or they may have been stolen, or, you know, who knows where they are. But the taxpayer lost them at that point, is my understanding, although I'm not sure who has the legal title to them at that point yet. With all due respect, I don't agree that the taxpayer lost control of the funds. The taxpayer, at a minimum, should have instructed the bank to pay the IRS as soon as it found out that the money had been taken from the account and the IRS had no record of receiving it. Or the taxpayer should have demanded the bank to provide proof of payment. Why should the bank do that? Why should the taxpayer do that when the money is gone and the levy is from the IRS? And the law requires it be paid over. I mean, why can't the IRS? I mean, I have to tell you, this is what drives people nuts about the IRS. This is the most bizarre situation. They've paid twice, and the IRS says, well, too bad. So why can't the IRS now go to the bank and say, look, we have this levy. It's out of this person's account. We never got the money. You owe us the money. Has the IRS tried? The tax has been paid. Pardon me? So the tax has since been paid. Well, of course, because he had to pay it so he could bring this lawsuit. To require the IRS to enforce the levy in this situation would be very, would be difficult for the IRS because of its limited resources. You're talking about a levy that was issued almost nine years ago and a tax that has been paid and a bank that has apparently never been cooperative with its customers. How can the taxpayer instruct the bank to do anything about the funds once the bank debits the taxpayer's account? There's nothing to stop the taxpayer from writing a letter to the bank that the taxpayer wrote its attorney, wrote letters to the IRS at that time. Well, the funds, if the taxpayer's account is debited, you know, all we know is the taxpayer doesn't have those funds at that point of the debit. We don't know if the funds have been put into some transfer account in the bank, you know, where they collect all these kinds of things, or put into some other person's account or paid to the government or paid to someone else. But we do know the taxpayer doesn't have control of the funds at that point once there's a debit. So if the taxpayer doesn't have control of the funds, why should the taxpayer as opposed to the IRS be given instructions to the bank? The taxpayer continued to have a contractual relationship with the bank. The bank account was not closed at the time the levy was served there, and the levy did not deplete all the funds in that account. In fact, the taxpayer was entitled to interest on the levied upon funds during the 21-day holding period. So the taxpayer did retain rights in this account. So I think it would be an oversimplification to say that the taxpayer had no rights whatsoever with respect to the bank. It had an ongoing contractual relationship. Well, they had rights with regard to other money in the taxpayer's account, but the taxpayer didn't have any rights or did it? I mean, what rights does the taxpayer have to the funds once they were debited in the amount of the debited funds? A debit means they're taken out of the taxpayer's account. I'm having trouble seeing how the taxpayer has a right to something taken out of their account without knowing more about it. I suppose, you know, maybe it could be put into some holding account at the bank, and the taxpayer could litigate the tax, and the lien could disappear, and the levy be dissolved, and they get it back. But right now I don't understand how they could instruct the bank to do anything when there's a debit to their account. I'm in a quandary at this moment because there is an additional piece of documentary evidence that wasn't submitted into the record, and I don't know why, because I didn't handle this case for the government at the trial court level. But we probably can't. Well, we can't consider. You are appropriately discreet, because obviously we'd love to know what you have in your back pocket, but we can't. But I suppose we could send something back to the district court, and a district court could maybe reopen a record if there's something under some standard, but not under all cases, you know. So I don't know what we can do about that. Well, ultimately, the issue here is, has the taxpayer proved that there was an overpayment of tax? And the district court found that it had not, because the taxpayer admitted that it did not know and admitted that it could not prove that the bank ever paid the IRS. There is no statutory or regulatory authority that requires the IRS to credit an account when payment has not been received. If payment has not been received, the taxpayer remains liable for that tax debt. And that was the situation here. The IRS never received payment. The taxpayer remained liable for that debt. The district court's decision was correct. There are no disputed facts in this case. This is sort of one of those cases where tough cases can make bad law either way. It's sort of hard to figure out what rule is sensible here when there's some obvious screw-up that isn't explained. I assume there's no possibility that this issue can be resolved by mediation at the court, because it's so sort of a zero-sum game? First of all, I'm hesitating because the rules that the government has for settling cases in mediation are such that I personally don't have authority to make that decision. I don't believe we – I can't remember when this case was first briefed. If we did get the letter from your circuit mediator, I don't recall that we did. So we haven't addressed that issue prior to now. If the case didn't go through our mediation process, is that correct? I can't remember. I think it didn't, but I'm not positive. It's been quite a while. When we do receive those letters at the government, we do consider them and respond when appropriate. That's about as well as I can answer that question. I apologize. My time is up. Are you from the tax section or are you from civil appellate section? I'm from tax civil appellate. There's a tax division. I'm from civil appellate. Okay. Thank you. Thank you. Fascinating case. Certainly one of a kind. I'm going home to check my banking. I'd like to make a few points. One of them is that all the events occurred. I mean, they didn't give the feds any notice after they took the money out of the account. They didn't need to. There's no procedure for informing the taxpayer what happens to their money. When was the first time your clients learned from the IRS that the IRS still thought money was outstanding? There's something in the record from 1998. I was just looking at it. So two years after the levy? It's not. It's 28. You can look at it at your leisure. But it's not saying. They're just, you know, the banks, I sent a note from the IRS to my client, you know, saying that the IRS talked to some crystal at the bank and it said it looks like it was paid as their books were in balance. So the bank was taking the position they paid it over to the IRS at that particular point in time. One thing she – I want you to read the Whiting Pools case. That's their case. But read it because it talks about constructive possession. And she seemed to be arguing that constructive possession is an old, archaic concept. But it's in one of her cited cases that they talk about constructive possession. And they're using these third-party cases to defend their position. They're using cases where a third party is claiming a superior right to the funds as a reason why they shouldn't be charged with receipt of this money. In this case, there was no third parties alleging a superior right to the funds. The taxpayer never alleged that they had a right to those funds or anything. We have a right to the second payment. There's a case that I cited, the Weintraub case, that talks that latches doesn't work against the government. If they're tardy on enforcing a levy or asking for the money, the IRS can still ask for it at a very late date. That's in my reply brief. So conceivably, you know, there's no records. I don't know what proof problems the IRS would have. But legally, they still have a right to collect those funds because there's no one claiming ownership over those. And they're trying to avoid ownership is what they're trying to do. I mean, the difficulty here is we don't know if it's a problem with the bank's system or the IRS's system. But I guess my argument, I agree with that. But we know it's not. We know your client didn't do anything. And see, under the statute in the regs, it looks like it creates a relationship between the bank and the government. After the 21st day, the regs say that the bank must turn over the funds to the IRS. Well, that's the obligation that was breached in this situation. But I don't see that that breach should be, you know, that my client should have. Does that raise some kind of an evidentiary situation where it raises a rebuttable presumption that it did so, or some prima facie evidence, and then the burden shifts to the IRS? Or does that statute just mean that maybe the bank is in hot water? I think the bank's in hot water. Right, but they're not here. We paid twice. Thank you. Very interesting case. Thank you, both counsel, for argument. The case of Stead v. United States is submitted. And the last case for argument this morning is Harris v. Bates.
judges: Thompson, McKeown, Gould